IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Frankenmuth Mutual Insurance Company, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 18 C 8142 |
| The Hockey Cup, LLC, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OPINION AND ORDER

In this insurance coverage dispute, plaintiff Frankenmuth Mutual Insurance Company seeks a declaratory judgment regarding its duty to defend the four defendants named in this suit—three corporate entities and their officer, Roger Dewey—in a lawsuit captioned *National Hockey League and NHL Enterprises LP v. The Hockey Cup, LLC; ABC Stein, LLC; A&R Collectibles, Inc.; and Roger S. Dewey*, No. 1:18-cv-06597 (S.D.N.Y.) (the "NHL Suit"). All agree that only two defendants—A&R Collectibles, Inc., and Dewey as A&R's executive officer—are insured by the "Businessowners Policy" at issue. Accordingly, plaintiff seeks a declaration that any duty to defend it may have with respect to the NHL Suit is limited to the reasonable defense costs allocable to the defense of its insureds. Alternatively, plaintiff seeks a declaration that it owes no duty

to defend at all because its insureds failed to give it timely notice of the claims asserted in the NHL Suit.[1]

The NHL Suit settled during the pendency of this action, with plaintiff paying the entirety of the settlement amount. Plaintiff has also paid one-third of defendants' reasonable defense costs in defending the NHL Suit. Plaintiff does not seek the return or reimbursement of these payments, and the parties do not appear to dispute that plaintiff's payment of the settlement amount satisfies any indemnity obligation plaintiff owes under the Businessowners Policy. Accordingly, the only substantive issue remaining for resolution, presently before me on cross-motions for summary judgment, is whether plaintiff owes the remaining two-thirds of defendants' defense costs.[2]

At the threshold, the parties dispute whether Illinois law or New York law governs the coverage question. Because my jurisdiction

---

[1] The complaint also seeks a declaration regarding plaintiff's indemnity obligations, but I understand from plaintiff's summary judgment submissions that these are no longer at issue in this suit. *See* Pl.'s Mem. at 3, 8 (DN 35).

[2] Defendants filed counterclaims seeking (1) a declaration that plaintiff is obligated to defend and pay defense costs in the *NHL Suit*, and (2) damages for breach of contract. Defendants A&R and Dewey have filed a motion styled as a "partial" motion for summary judgment. I assume the motion is partial in that it does not seek judgment in favor of the remaining two defendants, who do not claim any rights under the policy. While A&R and Dewey do not specify the claims on which they seek judgment in their favor, I interpret their motion as directed to Counts I, II, and XIII of plaintiff's complaint (the counts on which plaintiff seeks summary judgment) as well as on both of their counterclaims.

over this action is based on diversity, I apply Illinois choice-of-law principles to determine which state's law governs the interpretation of the insurance contract. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). And because the policy at issue does not contain an express choice-of-law provision, I examine the question using Illinois' "most significant contacts" test. *Id*. Under that test:

> [I]nsurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.

*Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 845 (1995) (quotation marks and citation omitted). While all of these factors are relevant to the choice-of-law inquiry, "the location of the insured risk is given special emphasis." *Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill.*, 643 N.E.2d 1280, 1287 (1994).

"Where the insured company conducts business nationwide...the location of the insured risk is the place where the insured's liability actually arises." *Western American Ins. Co. v. Moonlight Design, Inc.*, 95 F. Supp. 2d 838, 841-42 (N.D. Ill. 2000) (applying New York substantive law to coverage dispute involving insurance policy executed in Illinois and issued to an Illinois company sued in New York by a New York company claiming copyright infringement).

3

In this case, as in *Moonlight Design*, A&R and Dewey's liability arose in New York. While is true that the insureds are domiciled in Illinois and that the insurance contract was delivered in this state, the NHL Suit was filed in New York by entities headquartered in that state; it asserts claims under federal and New York state law; and it challenges defendants' use of the NHL's intellectual property in marketing and sales conducted in New York and elsewhere. *See* NHL Suit Compl. at ¶ 81 (alleging infringing sales and marketing on A&R's retail website, www.arcollectibles.com). *See also id.*, at ¶¶ 14-15, ¶¶ 134-149.[3] In view of the "special emphasis" Illinois law gives to the location of the risk, *Society of Mount Carmel*, 643 N.E. at 1287, I conclude that New York law governs the interpretation of the policy at issue. *See American Builders & Contractors Supply Co., Inc. v. Home Ins. Co.*, 1997 WL 43017, at *2 (N.D. Ill. Jan. 28, 1997) (applying Pennsylvania law to claims under general liability policy executed and delivered in Illinois for defense of suit brought in Pennsylvania courts, explaining that "the Illinois Appellate Court has elected to apply the law of the location of the insured risk rather than the place

---

[3] Indeed, the court rejected defendants' attempt to dismiss or transfer the NHL suit from that district to this one, observing that defendants "operate interactive websites through which individuals located across the country can purchase merchandise. In addition, the companies have posted merchandise for sale on websites such as Amazon.com," and concluding that New York was the more appropriate venue for the claims asserted in that case. NHL Suit, Opinion and Order of 1/8/2019, at 5, 11-12.

4

where the contracts were delivered and executed.") (citing *Society of Mount Carmel,* 643 N.E. 2d at 1287 and *Diamond State Ins. Co. v. Chester-Jensen Co.*, 611 N.E. 2d 1083, 1094 (Ill. App. Ct. 1993)).

Turning to the substantive issues, I begin with the question of whether plaintiff was relieved of any duty to defend the NHL suit based on A&R's failure to provide timely notice of its claim, since if plaintiff owed no duty at all, I need not reach the parties' dispute over whether or how to allocate defense costs. Plaintiff argues that any duty to defend it might otherwise have had under the policy was vitiated by A&R's failure to provide timely notice of the claims asserted in the NHL Suit. A&R and Dewey respond that A&R's notice to plaintiff was not untimely because they had no knowledge of the NHL's claims against them until July 27, 2018, when it was served with the complaint in the NHL Suit. They further argue that even if notice was untimely, plaintiff may not deny coverage on that basis because it has not shown prejudice from the delay and because it abandoned reliance on A&R's putative late notice by defending the NHL Suit and failing to assert late notice as a coverage defense at any time before filing the complaint in this law suit.

Under New York law, "compliance with the notice provision of an insurance contract is a condition precedent to all of the insurer's duties and liability under the policy, 'including the duty to defend.'" *Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d

5

255, 268 (E.D.N.Y. 2014) (quoting *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 273 (2d Cir. 1987)) (additional citations omitted). The policy at issue here requires A&R to notify plaintiff "as soon as practicable" of "an offense which may result in a claim," or if "a claim is made or 'suit' is brought against any insured." Compl. Exh. E at 59. New York law defines "as soon as practicable" to mean "within a reasonable time under all the circumstances." *Id.* at 267 (E.D.N.Y. 2014). The question is fact-dependent, but it may be determined as a matter of law when "(1) the facts bearing on the delay in providing notice are not in dispute, and (2) the insured has not offered a legally valid excuse for the delay." *Id*. at 268 (citations omitted).

Plaintiff argues that A&R knew of the trademark claims asserted in the NHL Suit at least by July of 2016 and learned of the counterfeiting claims in March of 2017, when the NHL Suit plaintiffs sent cease-and-desist letters in conjunction with A&R's activities. Yet it is undisputed that A&R did not notify plaintiff of these claims until August 6, 2018, when it tendered defense of the NHL Suit. There is no question that receipt of a cease-and-desist letter can trigger an insured's duty to provide notice of a potential claim. *See Gelfman* 39 F. Supp. 3d at 268-69 (E.D.N.Y. 2014) (granting summary judgment to insurer based on insureds' failure to provide timely notice within thirteen months after receiving cease-and-desist letter). Less clear is whether the July

6

2016 letter—which was sent to Roger Dewey at the business address of Stanley Stein, LLC,[4] and which objected to Stanley Stein, LLC's infringement of the NHL's trademark rights—reasonably informed A&R of a potential claim against it (or against Dewey in his capacity as an executive of that entity). But even assuming that it did not, the March 30, 2017, email—which was directed to defendants' attorney, and which identified specific, unlawful conduct by A&R—unquestionably did.

Indeed, although the March 2017 email begins by reiterating the NHL's objection to Stanley Stein, LLC's "infringement of [NHL's] trademark and trade dress rights" and seeking confirmation of steps that entity had taken (or would take) to cease the infringement, it goes on to state:

> Additionally, we recently learned that Mr. Dewey is selling counterfeit NHL merchandise through the A&R Collectibles website, including but not necessarily limited to a counterfeit Chicago Blackhawks jersey.... Trafficking in counterfeit goods is a crime under federal law. The sale of the counterfeit Chicago Blackhawks jersey also violates the trademark rights of both the NHL and the Chicago Blackhawks Hockey Team, Inc.

Compl. Exh. C at 2. The email then demands that A&R "(1) cease all sales of the Chicago Blackhawks jersey; (2) advise NHL of the vendor from which it purchased those products; (3) provide an accounting of its sales of that product; and (4) deliver any

---

[4] Defendants admit in their Answer that Stanley Stein, LLC is the previous name of defendant ABC Stein, LLC. Ans. at ¶ 4.

7

remaining inventory of the Chicago Blackhawks jersey to NHL for destruction." *Id*.

The foregoing excerpts belie A&R and Dewey's argument that the March 2017 email did not articulate any "occurrence" or "offense which may result in a claim" against A&R that would trigger its contractual notice obligations. Under New York law, an insured's "obligation to provide notice of an occurrence or offense is triggered by the insured's knowledge of events and circumstances which would *suggest* the *possibility* of a claim, not the actuality of a claim." *Gelfman*, 39 F. Supp. 3d at 267 (quoting *Prof'l Prod. Research Inc. v. Gen. Star Indem. Co.*, 623 F.Supp.2d 438, 444–45 (S.D.N.Y. 2008)) (emphasis in original). While it is true that the March 2017 email stops short of threatening legal action, it leaves no doubt that the NHL intended to enforce its trademark rights against A&R. In addition, the "accounting" the email demands echoes the demand it made in the July 2016 letter, which specified that the reason for the accounting was "*so we may determine if a payment of monetary damages is appropriate*." *See* Compl. Exh. B at 2 (emphasis added). This language belies A&R and Dewey's suggestion that prior to being served with the NHL Suit, A&R was unaware of any demand that could be defended, settled, and paid by the insurer. *See* Def.'s Reply/Opp. at 12. In short, there can be no reasonable dispute the March 2017 email made A&R and Dewey aware

of "the *possibility* of a claim," triggering their notice obligations under the policy.

Nor can there be any dispute that absent a valid excuse, the sixteen months that elapsed between A&R's receipt of that email and its tender of the NHL Suit to plaintiff amounts to an unreasonable delay. "Under New York law, delays for one or two months are routinely held 'unreasonable.'" *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 539 (S.D.N.Y. 2010) (citations omitted). *See also Bullseye Restaurant, Inc. v. James River Ins. Co.*, 387 F. Supp. 3d 273, 284 (E.D.N.Y 2019) (eight months' delay made notice "untimely as a matter of law") (citing cases). A&R and Dewey do not articulate any excuse for the delay, but they insist that plaintiff cannot deny coverage based on delayed notice because plaintiff was not prejudiced by the delay and because plaintiff "disclaimed" reliance on that defense by failing to assert prior to filing its complaint in this action.

In support of their no-prejudice argument, A&R and Dewey cite three cases: *Bullseye,* 387 F. Supp. 3d at 284; *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90, 94 (2d Cir. 2019); and *Wasau Underwriters Ins. Co. v. Old Republic General Ins. Co.*, 122 F. Supp. 3d 44, 55 (S.D.N.Y. 2015). As these cases observe, in insurance contracts governed by N.Y. Insurance Law § 3420(a)(5), "an insurer may not deny coverage under a liability

9

policy based on the failure of the insured to give timely notice of claim unless the insurer suffers prejudice as a result of the delay." *Bullseye*, 387 F. Supp. 3d at 284. *See also Harleysville*, 752 F. App'x. at 94 (same); *Wasau Underwriters*, 122 F. Supp. 3d at 55 (same). But as plaintiff points out, § 3420(a) governs only insurance policies or contracts "issued or delivered in" New York. *Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 650 (S.D.N.Y. 2013). A&R and Dewey do not contend that the Businessowners Policy was issued or delivered in New York, nor do they dispute plaintiff's assertion that the policy was issued and delivered in Illinois. Because § 3420(a)(5) does not govern the policy, plaintiff need not show that it was prejudiced by the late notice to deny coverage on that basis. *Id.* at 650 (policies "outside the ambit" of § 3420(a)(5) are subject to the common law of New York, which does not require insurer to show prejudice).

A&R and Dewey's final argument—that plaintiff "disclaimed" A&R's late notice as a basis for denying coverage by not raising the defense sooner—is a closer call. It is true that in a one-page decision in *General Acc. Ins. Group v. Cirucci*, 403 N.Y.S. 2d 773 (N.Y. App. Div. 1978), the Appellate Division of the New York state court held that because the insurer, "in its original letter of disclaimer, failed to assert the alleged unreasonable delay by claimants-respondents in giving notice of the occurrence," it "cannot now assert that delay as the basis for its disclaimer."

*Id*. In this case, however, plaintiff expressly reserved, throughout its claim correspondence with A&R and Dewey, "all of its rights, remedies, and defenses under the law and under the Policy, including its right to raise other and further coverage defenses as they become apparent." Decl. of Matthew Zielke, Exh. 1 at 13. And while a blanket reservation of rights may not suffice to avoid waiver where an insurer disclaims coverage on certain grounds without asserting others despite the insurer's knowledge of circumstances supporting the non-asserted defenses, *see State of N.Y. v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991), A&R and Dewey point to no evidence to establish *when* plaintiff became aware of the cease-and-desist letters it claims triggered A&R's notice obligations. *Cf. id.* (insurer is "deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, *and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense*.") (emphasis added). Because A&R and Dewey have not shown that plaintiff was aware of the factual basis for its late-notice defense earlier in the proceedings, they have not established that it intentionally waived the defense.

In sum, the undisputed record establishes that by at least March 30, 2017, A&R and Dewey knew or should have known of the NHL's claims against them, yet they failed to notify plaintiff of the claims until August 6, 2018. Because A&R and Dewey offer no

11

valid excuse for this sixteen-month delay, they failed to comply with the policy's requirement that plaintiff be given notice "as soon as practicable" of an "occurrence" or "offense which may result in a claim," vitiating plaintiff's duty to defend. *See Gelfman*, 39 F. Supp. 3d at 267-68. Finally, there is no dispute that plaintiff expressly reserved "all of its rights, remedies, and defenses" under the policy throughout its claim communications with A&R, and A&R and Dewey have not shown that despite this language, plaintiff intended to waive reliance on its late-notice defense. For these reasons, plaintiff's motion for summary judgment on Count XIII of its complaint is granted. The motion is otherwise denied as moot. A&R and Dewey's cross-motion for partial summary judgment is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**

United States District Judge

Dated: September 20, 2019